# IN THE MATTER OF THE APPLICATION OF EITARO YAMADA FOR A WRIT OF HABEAS CORPUS.
# IN THE MATTER OF THE APPLICATION OF ASANO MIYAZAKI FOR A WRIT OF HABEAS CORPUS.

## February 16, 1916.

1. *Aliens—Immigration—Deportation proceedings—Finality of findings of fact:* Findings of fact made by immigration officers in deportation proceedings are final, if a fair hearing has been accorded, even though such findings may have been erroneous. *Chin Yow v. United States*, 208 U. S. 8.

2. *Same—Same—Entry into the United States:* Aliens who came to Hawaii after the treaty of annexation but before the enactment of the Organic Act providing a government for the Territory, are to be regarded as having "entered the United States" within the meaning of the Immigration Act, 24 Stat. 898 as amended.

*Habeas Corpus:* On return to writ.

*J. W. Cathcart* for petitioners.

*H. W. Vaughan*, U. S. District Attorney, for respondents.

CLEMONS, J.   For convenience, these cases will be considered together, as they are closely related.   They arise out of an investigation before the immigration officers at the port of Honolulu, resulting in an order of deportation grounded on the fact, to quote from the warrant of the Secretary of Labor,

"That the said Eitaro Yammoto, alias Eitaro Yamada, is unlawfully within the United States in that he has been found assisting a prostitute; and that the said Asano Tsuda, or Asano Yamada, is a prostitute and has been found practicing prostitution subsequent to her entry into the United States."

At the immigration office the cases were heard together, and the transcript of proceedings in case No. 97 is made by reference a part of the record in case No. 99.

[1] The case of the woman, (No. 99), is clearly one in which the finding of the Secretary of Labor cannot be set aside by this court. No unfairness is shown, and there is enough in the record to justify the Secretary's conclusion that this alien had been practicing prostitution subsequent to her entry into the country. See Transcript of Case No. 97, pages (bottom paging) 1-3, 6, 7 (Eitaro), 4 (Asano herself), 9 (Shutaro).

As to the man, the case (No. 97), is not so clear: the evidence is, it seems, wholly circumstantial, much, perhaps, depending on the demeanor of the witnesses. See *Fong Gum Tong v. United States,* 192 Fed. 320, 321. And though I cannot say that I would have come to the same conclusion on the facts, and even though the finding on the facts may have been erroneous (See *Chin Yow v. United States,* 208 U. S. 8, 11-13, Holmes, J.), the case is one in which the court cannot set up its own judgment of the facts to override the conclusion of an independent authority, the executive, having jurisdiction to make a finding in the matter, especially as no unfairness is apparent in the conduct of the proceedings. It is unnecessary to cite the numerous decisions, including those of the Federal appellate courts, so holding. Though the evidence against the man is characterized above as circumstantial, it is by no means weak. We have here a woman, whom this man himself called "a poor old woman"—indicating her dependent condition (Transcript, 7), who lived with the man for some time perhaps as his mistress (Id., 1) but who very soon was practicing prostitution at Iwilei, the "red light" district of Honolulu (see Id., where first cited above) and came to his house whenever physically disabled for her trade. (Id., 3). The conclusion would not be unjustified then, from these, and from all, the circumstances in evidence, that the relation of the woman to the man was not exclusively, if at all, at the later stage, that of a mistress, but that they were on a business' basis in which their own

relations were not at all sexual. The fact that the man was able to start his pig ranch after the woman began prostitution, is worthy of some attention. (Id., 4). The circumstances tend to support the finding of the Secretary. As to assisting in the sense of protecting from arrest, see Id., 7; as to assisting in the sense of harboring, see Id., 3.

Apart from the case on the facts, however, these petitioners make the point of law that inasmuch as they both came to Hawaii in the year 1899, after annexation of these islands to the United States but before Congress in the Organic Act provided a government for this Territory and extended the Constitution and laws of the United States thereto, they are within the ruling of Judge Dole of this court in the recent case of *Sui Jóy* (Habeas Corpus, No. 75), ante, p. 374, and so the immigration law does not apply to them. In that behalf the argument is that neither of these parties ever "entered the United States," because "Hawaii was not an integral part of the United States,— not incorporated in the United States",—until the passage of the Organic Act the next year after their arrival.

But to apply the statute in this way is to construe the statute contrary to its reason and spirit (see Rev. L. Haw. 1915, sec. 12), if not in a manner leading to an absurdity (see Id., sec. 13). As the District Attorney points out, in spite of the language of section 3 of the immigration act (34 Stat. 898 as amended), that

"Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution *after such alien shall have entered the United States*, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; or who is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists, protects, or promises to protect from arrest any prostitute,

shall be deemed to be unlawfully within the United States and shall be deported";

nevertheless, section 33 having defined the term "United States" to mean for the purposes of the act, "the United States and any waters, territory, or other place subject to the jurisdiction thereof, except the Isthmian Canal Zone," it follows that any person who entered Hawaii after it became "subject to the jurisdiction" of the United States, (as Hawaii was at all times after the treaty of annexation,) is within the letter as well as within the spirit of the statute.

Let the writs of habeas corpus be discharged in both these cases, and the petitioners be remanded to the custody of the respondent, the immigration inspector at the port of Honolulu.